# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

|  |  |
|---|---|
| CENTURY SURETY COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> EDUCATION IS THE KEY, LLC, ) <br> DESSIE X a/k/a DESSIE TIPTON, and ) <br> FAYE ESCHOE, ) <br> ) <br> Defendants. ) | Case No. 2:22-cv-02704-JPM-cgc |

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Century Surety Company's ("Century Surety" or "Plaintiff") Motion for Summary Judgment filed on July 14, 2023. (ECF No. 31.) Defendants Education is the Key, LLC ("Education is the Key") and Dessie X a/k/a Dessie Tipton ("Dessie X") (collectively "Defendants") filed a Response to the instant Motion on August 11, 2023. (ECF No. 32.) Plaintiff filed a Reply on August 26, 2023. (ECF No. 39.) For the following reasons, the Motion is **GRANTED**.

## I.   BACKGROUND

The instant case is a declaratory judgment action seeking a resolution of a narrow question of insurance coverage. (See ECF No. 1.) Specifically, Plaintiff requests that the Court determine "whether Century Surety's policy affords liability coverage to Defendants with respect to the underlying wrongful death litigation against them in state court involving an incident

which resulted in the death of a minor child allegedly caused by Defendants' tortious conduct." (ECF No. 31-2 at PageID 287.)

### A. Undisputed Material Facts

For the purpose of the instant Motion the Parties stipulated to the following Undisputed Material Facts (ECF Nos. 31-1, 32-2):

1. Century Surety issued a Commercial Lines Policy to Education is the Key, LLC, bearing policy number CCP1011517, with effective dates of November 19, 2021 to November 19, 2022 (hereinafter the "Policy"). (ECF No. 25, ¶8; ECF No. 26 ¶8.)

2. The Policy is comprised of certain coverage parts including, for purposes of this matter, the Commercial General Liability ("CGL") Coverage Part. (ECF No. 25, ¶9; ECF No. 26 ¶9.)

3. The CGL Coverage Part is comprised of applicable Forms and Endorsements which are identified on the Policy's Schedule of Forms and Endorsements. (ECF No. 25-1 at PageID 183-4; ECF No. 25, ¶10; ECF No. 26 ¶10.)

4. The CGL Coverage Form provides, in pertinent part, as follows:

> **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
>
> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
>
> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.
>
> Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

       (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

       (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

       No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

    b. This insurance applies to "bodily injury" and "property damage" only if:

       (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

       (2) The "bodily injury" or "property damage" occurs during the policy period; . . .

    . . .

    e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

    This insurance does not apply to:
    . . .

    g. **Aircraft, Auto Or Watercraft**

       "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

3

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    (b) The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

. . .

### SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

    . . .

    c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    . . .

2. Each of the following is also an insured:

    a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . .

4

> . . .
>
> **SECTION V – DEFINITIONS**
>
> . . .
>
> 2. "Auto" means:
>
>    a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or
>
>    b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.
>
>    However, "auto" does not include "mobile equipment".
>
> 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> . . .
>
> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All "bodily injury" or "property damage" arising out of an "occurrence" or series of related "occurrences" is deemed to take place at the time of the first such damage or injury even though the nature and extent of such damage or injury may change; and even though the damage may be continuous, progressive, cumulative, changing or evolving; and even though the "occurrence" causing such "bodily injury" or "property damage" may be continuous or repeated exposure to substantially the same general harmful conditions.[2]
>
> . . .
>
> 18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
>
>    a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
>
>    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent. . . .

(ECF No. 25-1 at PageID 193-208; ECF No. 25, ¶11; ECF No. 26 ¶11.)

5. The coverage provided under Section I, Coverage A of the CGL Coverage Form is modified by way of an endorsement, entitled "Special Exclusions and Limitations Endorsement," which provides, in pertinent part, as follows:

> **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
> **SPECIAL EXCLUSIONS AND LIMITATIONS ENDORSEMENT**
> This endorsement modifies insurance provided under the following:
> COMMERCIAL GENERAL LIABILITY COVERAGE PART

5

> A. **In consideration of the premium charged this policy has been issued subject to the following exclusions being added to Coverages A & B:**
>    This insurance does not apply to:
>    . . .
>    4. **Criminal Acts**
>       a. "Bodily injury" or "property damage" arising directly or indirectly out of or resulting from a criminal act committed by any insured, including any additional insureds or
>       b. "Bodily injury" or "property damage" arising directly or indirectly out of or resulting from a criminal act at the direction of any insured, including any additional insureds.
>
>    5. **Punitive, Exemplary, Treble Damages or Multipliers of Attorneys' Fees**
>       Claims or demands for payment of punitive, exemplary or treble damages whether arising from the acts of any insured or by anyone else for whom or which any insured or additional insured is legally liable; including any multiplier of attorney's fees statutorily awarded to the prevailing party.

(ECF No. 25-1 at PageID 222; ECF No. 25, ¶12; ECF No. 26 ¶12.)

6. On or about June 22, 2022, a complaint for wrongful death was filed by Edward Ewing, III, as next of kin of C.F., deceased, against Defendants Education is the Key and Dessie X in the Circuit Court of Shelby County, Tennessee, bearing case number CT-2534-22 (the "Ewing Case"). (ECF No. 25, ¶13; ECF No. 26 ¶13.)

7. On or about December 22, 2022, a separate complaint for wrongful death was filed by Carissa Flowers, as administrator ad litem for the Estate of C.F., deceased against Defendants Education is the Key, Dessie X, and Faye Eschoe in the Circuit Court of Shelby County, Tennessee, bearing case number CT-5077-22 (the "Flowers Case") (referred to collectively as the "Underlying Litigation.") (ECF No. 25, ¶14; ECF No. 26 ¶14.)

8. The complaints filed in the Underlying Litigation allege that, on or about May 19, 2022, Defendants negligently allowed C.F. to be left in a vehicle for several hours

6

which resulted in C.F.'s death. (ECF No. 25, ¶16; ECF No. 26 ¶16; ECF No. 25-2 at ¶¶5–15; ECF No. 25-3 at ¶¶13–37.)

9. The complaint filed in the Ewing Case seeks a judgment against Education is the Key and Dessie X "for compensatory and punitive damages to be determined by the jury, not to exceed Fifteen Million Dollars ($15,000,000.00)." (ECF No. 25-2 at PageID 240.)

10. The complaint filed in the Flowers Case seeks a judgment against Education is the Key, Dessie X, and Faye Eschoe for compensatory damages in an amount not less than $5,000.000.00, punitive damages in an amount not less than $5,000.000, and loss of consortium damages in an amount not less than $1,000,000. (ECF No. 25-3 at PageID 248.)

11. Faye Eschoe was an employee of Education is the Key at all times relevant hereto. (ECF No. 25, ¶19; ECF No. 26, ¶19.)

12. The vehicle involved in the incident at issue in the Underlying Litigation was at all relevant times owned, maintained, and used by Faye Eschoe. (ECF No. 25, ¶19; ECF No. 26, ¶19).

13. Dessie X was indicted on felony criminal charges related to the death of C.F. (ECF No. 21, PageID 134; ECF No. 25, ¶20; ECF No. 26, ¶20.)

14. Faye Eschoe was indicted on felony criminal charges related to the death of C.F. (ECF No. 21, PageID 134; ECF No. 25, ¶20; ECF No. 26, ¶20.)

15. Century Surety has advised Education is the Key and Dessie X that it does not appear that the Policy affords coverage to them, either through defense or indemnity, for any legal liability, claims, or damages arising out of, resulting

from, or related to the incident as alleged in the Underlying Litigation. (ECF No. 25, ¶21; ECF No. 26, ¶21.)

16. Century Surety is currently providing Education is the Key and Dessie X a defense of the Underlying Litigation under a full reservation of rights. (ECF No. 25, ¶22; ECF No. 26, ¶22.)

17. The complaints filed in the Underlying Litigation allege that C.F. was left in a vehicle for several hours which resulted in C.F.'s death. (ECF No. 25, ¶16; ECF No. 26, ¶16.)

18. Education is the Key is the Named Insured on the Policy. (ECF No. 25-1 at PageID 182.)

19. Dessie X qualifies as an "insured" under Section II.1.c. of the Policy in her role as owner, member, and/or manager of the limited liability company. (ECF No. 25 at PageID 201.)

20. Faye Eschoe qualifies as an "insured" under Section II.2.a. of the Policy in her role as an employee of Education is the Key. (ECF No. 25-1 at PageID 202.)

21. Punitive damages are explicitly excluded from coverage under the Policy due to application of the "Punitive, Exemplary, Treble Damages or Multipliers of Attorneys' Fees" exclusion in paragraph A.5. of the Special Exclusions and Limitations Endorsement. (ECF No. 25- 1 at PageID 222.)

## II. LEGAL STANDARD

### A. Summary Judgment

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact

would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the non-moving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448–49; see also FED. R. CIV. P. 56(e); Matsushita, 475 U.S. at 587. "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc) (citing Celotex, 477 U.S. at 323).

In order to "show that a fact is, or is not, genuinely disputed," a party must do so by "citing to particular parts of materials in the record," "showing that the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact." L.R. 56.1(b)(3); Bruederle, 687 F.3d at 776 (alterations in original) (quoting FED. R. CIV. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting Celotex, 477 U.S. at 325)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" Martinez, 703 F.3d at 914 (alteration in original)

9

(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  "The court need consider only the cited materials, but it may consider other materials in the record."  FED. R. CIV. P. 56(c)(3).  "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'"  Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008), abrogation recognized by Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir. 2015)).

The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'"  Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 251–52).  A party opposing a summary judgment motion "'may not rest upon the mere allegations or denials of [their] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'"  Zakora v. Chrisman, 44 F.4th 452, 464 (6th Cir. 2022) (alteration in the original) (quoting Liberty Lobby, 477 U.S. at 248).  "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor."  Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 251).  "[I]n order to withstand a motion for summary judgment, the party opposing the motion must present 'affirmative evidence' to support his/her position."  Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992) (citing Liberty Lobby, 477 U.S. at 247–254; Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)).  "Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion

for summary judgment." Arendale v. City of Memphis, 519 F.3d 587, 605 (6th Cir. 2008) (citations omitted).

### B. Applicable State Law

Under the Erie rule, a federal court deciding a diversity case under state law must apply the law of the state's highest court. See Erie R.R. v. Tompkins, 304 U.S. 64 (1938). In Allstate Ins. Co. v. Watts, the Tennessee State Supreme Court held that the "'concurrent causation doctrine' which provides that coverage under a liability policy is equally available to an insured whenever an insured risk constitutes a concurrent proximate cause of the injury[,]" is determinative of whether an insurance coverage exclusion applies. 811 S.W.2d 883, 886 (Tenn. 1991). Thus, under the concurrent causation doctrine, insurance coverage is still provided "where a nonexcluded cause is a substantial factor in producing the damage or injury, even though an excluded cause may have contributed in some form to the ultimate result and, standing alone, would have properly invoked the exclusion contained in the policy." Id. at 887. The concurrent causation doctrine, however, does not apply where there is no nonexcluded concurrent cause to provide coverage. See Clark v. Sputniks, LLC, 368 S.W.3d 431, 441 (Tenn. 2012) (holding that concurrent causation doctrine did not apply where allegations of insured's negligence were not nonexcluded concurrent causes).

"The question of the extent of insurance coverage is a question of law involving the interpretation of contractual language." Id. "Insurance contracts are 'subject to the same rules of construction as contracts generally,' and in the absence of fraud or mistake, the contractual terms 'should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties.'" Id. (citing U.S. Bank, N.A. v. Tennessee Farmers Mut. Ins. Co., 277 S.W.3d 381, 386-7 (Tenn. 2009)).

Furthermore, "[i]t is accepted in the overwhelming majority of jurisdictions that the obligation of a liability insurance company to defend an action brought against the insured by a third party is to be determined solely by the allegations contained in the complaint in that action . . . Whereas the duty to defend depends only upon the facts as alleged to be, the duty to indemnify, i.e., ultimate liability, depends rather upon the true facts." St. Paul Fire & Marine Ins. Co. v. Torpoco, 879 S.W.2d 831, 835 (Tenn. 1994) (citations omitted).

## III.  ANALYSIS

Century Surety argues that the Court should grant summary judgment because: (1) the Auto Exclusion[1] in Defendants' commercial general insurance policy excludes coverage for the incident referenced in the Underlying Litigation; and (2) the Criminal Act Exclusion[2] applies, because Defendant Dessie X has been indicted on criminal charges related to the death of the infant.

In Response, Defendants argue that the Auto Exclusion provision does not apply because Plaintiff incorrectly applies the Braxton decision, in which the Sixth Circuit failed to properly apply the concurrent causation doctrine.  (ECF No. 32 PageID 303-10.)  Defendants argue that under the concurrent causation doctrine "[t]he failure to remove the infant from the vehicle was plainly and obviously a substantial factor in causing the injury[,]" and thus the exclusion should not apply.  (Id. at PageID 311.)  Defendants further argue that the Criminal Act Exclusion is "at

---

[1] The Auto Exclusion refers to Section I, Coverage A, Exclusion 2.g. of the Policy, which states that coverage does not apply to: "'Bodily injury' . . . arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured. Use includes operation and 'loading or unloading.'"  (ECF No. 25-1 at PageID 196.)

[2] The Criminal Act Exclusion refers to exclusion in paragraph A.4. of the Special Exclusions and Limitations Endorsement to the Policy, which states that coverage does not apply to: "'Bodily injury' or 'property damage' arising directly or indirectly out of or resulting from a criminal act committed by any insured, including any additional insureds or 'Bodily injury' or 'property damage' arising directly or indirectly out of or resulting from a criminal act at the direction of any insured, including any additional insureds."  (ECF No. 25-1 at PageID 222.)

best, premature[,]" given that "there has been no finding by a court of law that [Dessie X's] conduct was criminal or violated any criminal statute. (Id. at PageID 301.)

In Reply, Plaintiff argues that "Defendants' argument fails to recognize that the concurrent causation doctrine does not apply automatically[,]" but rather that there "must be a substantial factor in producing the claimed injury." (ECF No. 39 at PageID 371.)

### A. The Auto Exclusion

To determine if the Auto Exclusion applies, the Court first must determine if a "nonexcluded cause is a substantial factor in producing the damage or injury[,]" or in this case the death of a minor. Allstate, 811 S.W.2d at 887. Here, Defendants argue that "the failure to remove the infant from the vehicle was plainly and obviously a substantial factor in causing the injury." (ECF No. 32 at PageID 311.) Defendants therefore argue that the infant's death was not caused by any use of the vehicle "but instead by the negligent act of being left inside the vehicle on a day that was very hot." (Id.)

The arguments offered by the Defendants fail to provide a separate nonexcluded cause, and no such separate nonexcluded cause exists based on the facts plead in this case. Both of the complaints filed in the Underlying Litigation allege that Defendants were negligent in failing to properly transport the infant to the daycare center, which ultimately resulted in the infant's death. (ECF Nos. 25-2; 25-3.) The alleged facts also align with true facts of the case as outlined by the Defendants in their Response. (ECF No. 32-2 at PageID 333-4.) The negligence in not removing or unloading the infant from the car falls squarely within the definition of a use of a vehicle under the Auto Exclusion. The Auto Exclusion clearly states that "[u]se [of an auto] includes operation and 'loading **or unloading**.'" (ECF No. 25-1 at PageID 196 (emphasis added).) Faye Eschoe ("Ms. Eschoe"), who was transporting children (including the infant) failed to properly unload the infant upon arrival at Education is the Key. This failure or

13

negligence is clearly defined in the Auto Exclusion provision as part of auto use, and thus excluded from coverage.

Given that no nonexcluded cause exists[3], the concurrent causation doctrine does not apply here. See Clark, 368 S.W.3d at 441. The Court thus holds that the Auto Exclusion applies, and Century Surety is not required to either indemnify or defend the Defendants in the Underlying Litigation.

B. The Criminal Exclusion

It is a well-known pillar of the United States criminal justice system that a criminal defendant is presumed innocent until proven guilty. See Taylor v. Kentucky, 436 U.S. 478 (1978). An indictment is not a finding of guilt, but rather a formal charging of an individual with committing a crime. Given that Dessie X has only been indicted, but not found guilty of a crime, the Criminal Exclusion does not apply as her acts and cannot be deemed criminal until she is found guilty of the crimes for which she is indicted.

IV. CONCLUSION

For the foregoing reasons, Motion for Summary Judgment (ECF No. 31) is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**, this 9th day of February, 2024.

    /s/ Jon P. McCalla
    JON P. McCALLA
    UNITED STATES DISTRICT JUDGE

---

[3] The Court does not address the arguments presented by both parties regarding the accuracy of the decision in Capitol Idem. Corp. v. Braxton, 24 Fed. Appx 434 (6th Cir. 2001) for two reasons. First, given that the concurrent causation doctrine is not applicable in the instant case the arguments presented by the parties do not impact the analysis. Second, in its response Century Surety "readily acknowledge[ed] that Tennessee Supreme Court adopted the concurrent causation doctrine in [Allstate]." (ECF No. 39 at PageID 371.)